# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY SERRA, | CASE NO. CV-F-09-2085 LJO |
| Appellant, | **ORDER ON BANKRUPTCY APPEAL** |
| vs. | |
| JAMES E. SALVEN, Chapter 7 Trustee, | |
| Appellee. | |

## INTRODUCTION

Appellant J. Tony Serra ("Mr. Serra"), appearing in propria persona, appeals an order of the United States Bankruptcy Court for the Eastern District of California ("bankruptcy court") granting summary judgment in favor of appellee James E. Salven, Chapter 7 Trustee ("Trustee") and against Mr. Serra. Mr. Serra raises four issues on appeal: (1) Whether the bankruptcy court erred in finding that the transfer of $30,000 by debtors to Mr. Serra was a fraudulent transfer when the debtors were "mere conduits" for money which was the property of others; (2) Whether the bankruptcy court erred in granting summary judgment when there was no proof that payment was not in satisfaction of a valid contractual obligation; (3) Whether the bankruptcy court denied Mr. Serra a fair hearing and due process when it denied his request for a continuance; and (4) Whether the bankruptcy court erred in granting summary judgment on a sparse record, when it also denied Mr. Serra's request for a continuance and his right to obtain competent bankruptcy counsel. For the reasons discussed below, this Court DENIES in part Mr. Serra's appeal, AFFIRMS in part the bankruptcy court's order, and REMANDS this action to the bankruptcy court for further proceedings.

## BACKGROUND[1]
### Adversary Action Complaint and Answer

---

[1] Unless otherwise noted, the facts are undisputed.

On May 1, 2008, the son of Francisco Lujan Garcia and Liduvina Garcia Garcia ("Debtors") was booked into Madera County jail on an attempted murder charge. On May 15, 2008, Debtors transferred to Mr. Serra, an experienced criminal lawyer, $30,000 on behalf of their son to represent their son on the attempted murder charge in Madera County, California.

Debtors filed for Chapter 7 bankruptcy relief on July 22, 2008. No relatives were listed as creditors on the bankruptcy schedules, nor was the $30,000 transfer to Mr. Serra disclosed on the Statement of Financial Affairs. The amended answer to question No. 10 on the Statement of Affairs named Mr. Serra as the transferee of the $30,000. The date of the transfer was May 16, 2008. As to the property transferred and value received, Debtors wrote:

> Debtors' son, Miguel Angel Garcia, was charged with a crime. Friends and family entrusted Debtors with approximately $29,000.00 to pay criminal defense attorney, J. Tony Serra on son's behalf. Approx. $1,000.00 was transferred from son Miguel Angel Garcia, to debtors, to also pay attorney J. Tony Serra. Total for attorney fees was $30,000.00. NO VALUE RECEIVED.

This was the only amendment to Debtors' Schedules and Statement of Affairs.

On May 29, 2009, the Trustee initiated an adversary action against Mr. Serra. In the adversary action complaint, the Trustee alleged that Debtors transferred $30,000 to Mr. Serra, were insolvent at the time of the transfer, and received less than a reasonable value in exchange for the $30,000. Based on these facts, the Trustee alleged that the transfer was fraudulent pursuant to 11 U.S.C. §§544, 548, and 550. The Trustee sought to void the $30,000 transfer and return the property to the bankruptcy estate.

Mr. Serra, appearing in propria persona, answered the complaint with a general denial. Mr. Serra denied specifically two allegations. First, Mr. Serra denied that he caused Debtors to "make a transfer" knowing that they were going to file bankruptcy. Mr. Serra asserted that he believed at all times that Debtors were solvent. Thus, Mr. Serra contends that he "certainly did not cause [Debtors] to 'hinder, delay or defraud' anyone!"[2] Second, Mr. Serra denied that the Debtors "received less than a reasonably equivalent value in exchange for such transfer." To this allegation, Mr. Serra replied:

---

[2] The Trustee contended that the transfer of $30,000 was void based on a constructive fraud theory. "Constructive fraud proceeds on the theory that, although the debtor may not have had a fraudulent intent, the court nevertheless should void the transfer, usually because the debtor received inadequate consideration." *In re Bledsoe*, 569 F.3d 1106, 1109 (9th Cir. 2009).

2

> Poppycock! I am a very experienced criminal trial lawyer who does complex cases for peanuts (see Exhibit A, C.V.). Debtor's son's case was a "horror story" (see Exhibit B). After protracted litigation, a very good result was obtained. The reasonable value of my services was $75,000. I took $25,000 ($5,000 was paid to the investigator).

Mr. Serra filed his answer on June 23, 2009.

**July 2009 Status Conference**

The bankruptcy court held a July 30, 2009 status conference. Gayle Gutekunst ("Ms. Gutekunst") appeared specially for Mr. Serra, noting that Mr. Serra was representing himself in propria persona. While discussing the allegations and defense, the bankruptcy court advised Ms. Gutekunst and Mr. Serra to consult with a bankruptcy attorney numerous times. The bankruptcy court noted that Mr. Serra's defense was inapposite under bankruptcy law and attempted to explain some of the issues to Ms. Gutekunst:

| | |
|---|---|
| Court: | Mr. Serra argues that he did good work, and I'm sure he did great work, but that doesn't mean that the debtors received value, the debtors' estate received any kind of value for the money that was paid, and that's really the issue that I'm ultimately going to have to decide here. |
| Ms. Gutekunst: | And what do I–what do we do to get discovery alleging–to verify the inadequately pleaded complaint alleging fraud? I'd like to have-- |
| Court: | Fraudulent transfer. **Does Mr. Serra–do you and Mr. Serra understand bankruptcy law?** |
| Ms. Gutekunst: | No, but I'm sure I understand fraud. |
| Court: | **Well, you really need to**, because fraudulent transfer doesn't have anything to do–it can but doesn't have to do have anything to do with actual fraud. A transfer of money can be–if I–if I–if I gave you a $30,000 gift just because I felt like doing it and didn't pay my creditors, that is a, under bankruptcy–and then turned around and filed bankruptcy and tried to discharge my creditors' debts, that gift would be a fraud on my creditors– |
| Ms. Gutekunst: | I understand. |
| Court: | –if I didn't get anything in return, that's the issue here. These folks, out of the goodness of their heart, it appears, paid for the criminal defense of their son, and–but they didn't get anything in return for it in terms of value to their estate that should have gone to their creditors. |

***

| | |
|---|---|
| Court: | **Mr. Serra really needs to get–talk to a bankruptcy attorney and have a bankruptcy attorney review this and decide if he really has a defense**. And I can tell you that what he's pled in his answer is–has really almost nothing to do with any defense I could consider. I'm sure, and I'm willing to assume for |

3

> purposes of this, that he did a wonderful job for the debtors' son and that the value of the services he rendered was probably worth far more than what he got paid, but the issue is whether these debtors...got anything in return for that other than just the moral warm and fuzzy feeling in knowing that their son's not in prison someplace. **So you really need to have a bankruptcy attorney look into this and at least advise Mr. Serra in terms of what it means and where he stands**.

The bankruptcy court then advised the Trustee "to send out some requests for admissions and file a motion for summary judgment unless there's a real issue of fact here." The Trustee agreed that was the proposed course of action.

At the status conference, Ms. Gutekunst moved to dismiss the complaint, arguing that the fraudulent conveyance allegations were insufficient. Ms. Gutekunst argued, *inter alia*, that there was no notice of when Mr. Serra was supposed to have known that the transfer was fraudulent. Noting the differences between common law fraud and fraudulent transfer under the bankruptcy code, the bankruptcy court again advised: "[Y]ou need to understand the Bankruptcy Code." The bankruptcy court concluded that the complaint was adequately pleaded and denied the motion to dismiss.

At the end of the status conference, the parties set a date for a further status. The date of the status conference was set to accommodate Mr. Serra's unavailability until October 2009. The bankruptcy court concluded the conference with a final admonition:

| | |
|---|---|
| Court: | Mr. Serra really needs to talk to a bankruptcy attorney about this, understand what it means and what his potential defenses are. |
| Ms. Gutekunst: | Thank you. |
| Court: | It's not–has nothing to do with common law fraud, and he needs to get beyond that, okay? |

**Discovery and Summary Judgment Motions**

The Trustee sent out Fed. R. Civ. P. 26 disclosures in July 2009. Mr. Serra sent his disclosures on July 27, 2009, indicating there were "[n]o disclosures applicable." On August 18, 2009, the Trustee served Mr. Serra with a Request for Admissions and Special Interrogatories. Mr. Serra responded to the admissions requests on October 7, 2009, admitting all of the requests.

On October 6, 2009, the Trustee filed and served its summary judgment motion. The Trustee set a hearing for the summary judgment hearing for November 18, 2009. Mr. Serra failed to oppose the

Trustee's summary judgment motion.

Mr. Serra filed a counter-motion for summary judgment on October 7, 2009, asserting two affirmative defenses. First, Mr. Serra argued that pursuant to 11 U.S.C. §550, the Trustee may not recover from a transferee any monies that the transferee took in good faith and without knowledge of the voidability of the transfer. Second, Mr. Serra argued that the Debtors received consideration and value for the $30,000. Mr. Serra contended that the Debtors' received consideration in three ways: (1) satisfaction that the parents did their moral and family duty by alleviating their fears, pain, and suffering; (2) heightened self-esteem, because family members, neighbors, and friends showed increased respect for the parents' sacrifice; and (3) the son's love that his parents will be faithful to him forever. On these bases, Mr. Serra requested the adversary action to be dismissed.

The Trustee opposed Mr. Serra's summary judgment motion on November 4, 2009, on procedural and substantive grounds. The Trustee pointed out distinctions between the instant action and the cases upon which Mr. Serra relied. The Trustee argued that the good faith exception does not apply to the Debtors because they are an initial transferee. The Trustee further pointed out a number of procedurally defects to Mr. Serra's summary judgment motion. Among these defects, Mr. Serra failed to attach evidence to support the motion.

**Motion for Continuance and Summary Judgment Hearing**

The day before the summary judgment motion hearing was set, Mr. Serra filed an unnoticed motion to continue the hearing. In the motion, Mr. Serra stated that at the November 18, 2009 hearing, Mr. Serra "will request a short continuance...so that the defendant, who appears in propria person, may engage an attorney who specializes in bankruptcy law." In a declaration attached to the motion for a continuance, Mr. Serra declares that he "know[s] nothing about bankruptcy law." Mr. Serra further averred: "At this point in time, defendant realizes that there are many complex issues under litigation and confesses that he is not qualified to represent himself." Based on this admission, Mr. Serra requested a short continuance "of all pending motions to enable defendant to engage counsel and properly amend defendant's previously filed motions to comport with procedural legal requirements." As to timeliness of the motion, Mr. Serra avers that the motion was "filed somewhat tardy because defendant has been in [sic] engaged in a murder trial (among other things!) and did not read the

Trustee's Responses until this past weekend."

On November 18, 2009, the bankruptcy court heard the summary judgment motions and the motion to continue all pending motions. Jeff Hammerschmidt ("Mr. Hammerschmidt"), a criminal lawyer, appeared on behalf of Mr. Serra. The bankruptcy court indicated that it intended to deny Mr. Serra's counter-motion for summary judgment both because it was not supported by evidence and because it was deficient procedurally. The bankruptcy court further indicated that the Trustee's summary judgment motion would be granted, as all of the elements of the claim were supported by evidence. As to the motion for a continuance, the following exchange occurred, in relevant part:

Court: Mr. Serra says he wants to find an attorney 'cause he doesn't know anything about bankruptcy. I don't recall who appeared at the last hearing, but I specifically remember a conversation with Mr. Serra or somebody that appeared on his behalf that he desperately needed to get a bankruptcy attorney to advise him. Are you–are you a bankruptcy attorney, Mr. Hammerschmidt?

Mr. Hammerschmidt: No, I'm not. He asked me to stand in for [sic] today and ask for a continuance. And if there was going to be a denial of the motion–his summary judgment motion, to make it without prejudice so that he could find a bankruptcy attorney.

***

Court: ...I have admissions that–responses to admission that support all the elements. I have–how much time does he now think he needs to get a bankruptcy attorney?

Mr. Hammerschmidt: To get one and have somebody prepare, four to six weeks.

Court: I'm not going to give him four to six weeks. He's had plenty of time. If that's the best he can do, I'm just going to grant the motion for summary judgment.

***

Court: It's too late to respond to the summary judgment motion. I mean is he's asking me to give him more time to respond as well?

Mr. Hammerschmidt: Yes.

Ms. Manfredo: Your Honor, I would oppose that. The wording was very clear in the notice, it was adequately noticed, and he didn't file a response.

Court: Mr. Hammerschmidt, with all due respect, I just see this as a big stall...I definitely remember whoever–advising whoever appeared on his behalf that he desperately needed to get a continuance that says, Well, I don't know anything about bankruptcy law, I need to get an attorney. And he apparently doesn't know anything about summary judgment–Federal Rules of Civil Procedure with regard to summary judgment motions either.

1  The bankruptcy court then denied the motion for a continuance and granted the Trustee's summary
2  judgment motion. The bankruptcy court explained that the evidence presented by the Trustee, including
3  Mr. Serra's admissions, supported each element of the claim. As to whether the debtor "received less
4  than a reasonably equivalent value in exchange" for the transfer, the bankruptcy court reasoned:

Court:   The debtors did not receive consideration for that, which is the–according to the standard that has to be viewed by a bankruptcy court, they did not receive consideration in the sense that they received anything in return that enhanced the bankruptcy estate.

***

This is just a basic vanilla fraudulent conveyance matter, and I don't see much defense for it, I don't see any evidence that suggests that these folks got anything material in return for their $30,000. There were trying in good faith to help their son, but the measure of consideration is not good will and good feelings and everything that's argued by Mr. Serra, the measure of consideration is what–whether the estate received anything back of value that could be used to pay creditors. This is a fraud on the creditors is what this is.

The bankruptcy court granted the Trustee's summary judgment motion and entered judgment in favor of the Trustee. Mr. Serra timely appealed the judgment.

## Issues Presented[3]

Mr. Serra presents the following issues on appeal:

1. Whether the bankruptcy court erred in granting the Trustee's motion for summary judgment and holding there was a fraudulent transfer where:

   a. the record included evidence that the Debtors were mere conduits for money which were the property of other persons used to pay Mr. Serra;

   b. the Trustee failed to demonstrate that there "no lack of reasonably equivalent value transferred in exchange for the funds paid; and

   c. the issue of reasonably equivalent value provided in exchange for the transfer was not explored adequately; and

2. Whether the bankruptcy court denied Mr. Serra a fair hearing and due process when it denied Mr. Serra's request for a continuance.

---

[3] Mr. Serra preserved four issues on appeal. This Court has reformulated the issues as presented to match the arguments raised on appeal.

7

**DISCUSSION**

**I.     Introduction**

Pursuant to 11 U.S.C. § 544(b)(1), the Trustee "may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law." Here, the Trustee argues that the transfer of $30,000 by the Debtors to Mr. Serra was voidable under federal law. Specifically, the Trustee sought to reclaim the $30,000 debtors paid to Mr. Serra as a fraudulent transfer pursuant to 11 U.S.C. §548, which provides in relevant part:

> (a)(1)   The trustee may avoid any transfer...of any interest of a debtor in property or any obligation...incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> (B)(i)   received less than reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

For the Trustee to avoid a transfer as fraudulent under this section, the Trustee must establish the following four elements: "(1) the transfer must have involved property of the debtor; (2) the transfer must have been made within [two years] of the filing of the petition; (3) the debtor must not have received reasonably equivalent value in exchange for the property transferred; and (4) the debtor must have been insolvent[.]" *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991). The bankruptcy court granted the Trustee's summary judgment motion, finding that the Trustee was entitled to judgment as a matter of law.

Mr. Serra asserts numerous issues on appeal. Mr. Serra argues that the bankruptcy court erred in granting the Trustee's summary judgment motion because: (1) the $30,000 was the not property of the Debtors, since Debtors were "mere conduits" of the money that was transferred; (2) the Trustee failed to establish that there as no lack of equivalent value transferred in exchange for the funds; and (3) factual issues were not explored adequately through discovery. Mr. Serra further argues that he was denied a fair hearing and due process when the bankruptcy court denied his motion to continue the hearing on the summary judgment motions.

This Court will address Mr. Serra's due process and fairness arguments first. Next, the Court

will consider Mr. Serra's arguments appealing the bankruptcy court's order granting Trustee's summary judgment motion. As an initial matter, this Court addresses procedural defects to Mr. Serra's arguments and issues improperly raised for the first time on appeal. Finally, the Court addresses these issues substantively.

**II.     Whether the bankruptcy court denied Mr. Serra a fair hearing and due process**

Mr. Serra contends that the bankruptcy court's failure to grant the continuance resulted in a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. Pursuant to the Fifth Amendment: "No person shall be...deprived of...property, without due process of law." U.S. Const. Amend. 5. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976).

Mr. Serra argues that the bankruptcy court denied him his right to due process both by denying him an opportunity to be heard and denying him a reasonable opportunity to consult with counsel. As part of due process, "some kind of hearing is required at some time before a State finally deprives a person of his property interests." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981). The opportunity to be heard must be given "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1962). In addition, "a defendant must be given a reasonable opportunity to employ and consult with counsel." *Chandler v. Fretag*, 348 U.S. 3, 10 (1954).

This Court finds no basis to support Mr. Serra's position that he was denied the opportunity to be heard. Mr. Serra was given notice of the case against him by way of complaint filed in May 2009. Mr. Serra received that notice and responded to the complaint with a verified answer. Mr. Serra was given notice at the July 30, 2009 status conference that a summary judgment motion was forthcoming. Mr. Serra received notice of that motion in October 2009 and had an opportunity to respond to that motion in accordance with the Federal Rules of Civil Procedure. That Mr. Serra admittedly chose not to read the motion until after the time for opposition had elapsed and chose not to oppose that motion does not affect his opportunity to be heard. The bankruptcy court also heard the motion to continue as the November 18, 2009 hearing, although that unnoticed motion was filed the day before. Counsel appearing on behalf of Mr. Serra argued the motion at the hearing. Although Mr. Serra's motion was

denied, the Court listened to and considered the arguments. After a thorough review of the bankruptcy court proceedings, this Court is satisfied that Mr. Serra had a meaningful opportunity to be heard.

Similarly, Mr. Serra had a meaningful opportunity to employ and consult with counsel. Mr. Serra had a reasonable opportunity to consult with bankruptcy counsel, as almost six months elapsed from the time the action was initiated against him on May 29, 2009 and the time judgment was entered in favor of the Trustee on November 19, 2009. At the July 30, 2009 status conference, the bankruptcy court repeatedly urged Mr. Serra, though his "specially appearing" counsel, to consult with and retain bankruptcy counsel. Rather than consult with bankruptcy counsel after that hearing, Mr. Serra waited over three months from the time he was advised by the bankruptcy court to consult with competent bankruptcy counsel in July 30, 2009 to request a continuance so that he might engage bankruptcy counsel on November 17, 2009. The record establishes that Mr. Serra had a reasonable opportunity during the proceedings to consult with bankruptcy counsel.

The bankruptcy court was well within its discretion to deny Mr. Serra's unnoticed request to continue, brought the day before the hearing on the Trustee's unopposed summary judgment motion and Mr. Serra's contested counter-motion for summary judgment. Because Mr. Serra had opportunity to be heard and to consult with counsel, the bankruptcy court did not deny Mr. Serra his due process rights. Accordingly, this Court denies Mr. Serra's due process claim.

**III.     Whether the bankruptcy court erred to grant Trustee's Summary Judgment Motion**

    **A.     Standard of Review**

A district court reviews the bankruptcy court's grant of a summary judgment de novo and applies the standards of review for a Fed. R. Civ. P. 56 motion. *See, Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir 2005); *see also, In re Nash*, 765 F.2d 1410, 1413 (1995) (superceded on other grounds by statute) ("The bankruptcy court's grant of summary judgment, affirmed by the district court, is subject to de novo review."); *In re Optical Techs., Inc*., 246 F.3d 1332, 1335 (11th Cir. 2001) (both district court and appellate court review bankruptcy court's summary judgment order de novo and apply Fed. R. Civ. P. 56 standards).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case").

If "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Caterett*, 477 U.S. 317, 322 (1986).  Fed. R. Civ. P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).  A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

**B.     Issues Raised for the First Time on Appeal**

In the bankruptcy proceedings, Mr. Serra challenged the action by arguing that he lacked fraudulent intent and had good faith.  In addition, Mr. Serra argued that the Debtors received more than

11

reasonable value in exchange for their services, both based on the value of his services and based on the value of heightened self-esteem, the love and trust of their son and other intangible values. Mr. Serra failed to raise the "mere conduit" theory in the bankruptcy proceedings and never challenged whether the money was the property of Debtors. Similarly, Mr. Serra failed to raise the arguments now presented to challenge whether Debtors received reasonable value; namely, the speculation that Debtors may have had a contractual obligation to him. These arguments were not raised in the answer to the complaint, in opposition to the Trustee's summary judgment motion, or in Mr. Serra's separately-filed summary judgment motion. These arguments were not raised at the summary judgment motion hearing. These arguments and issues are raised for the first time on appeal.

As a general rule, this Court does not consider an issue raised for the first time on appeal. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). There are three exceptions to this general rule: (1) "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process"; (2) "when a new issue arises while appeal is pending because of a change in the law," or (3) "when the issue presented is purely one of law and either does not depend on the  factual record developed below, or the pertinent record has been fully developed." *Id*. (quoting *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985)). In all cases, this Court "will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice." *Id*. (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).

Neither party addresses this issue. Although Mr. Serra presents no argument as to why this Court should deviate from the general rule to consider issues raised for the first time on appeal, Mr. Serra does assert an unjust result and unfairness of proceedings throughout his memorandum. The Trustee fails to address this issue in its response.

The Court finds that the first two exceptions are inapplicable in this case. No party suggests that there has been a change in the law. In addition, nothing in the record suggests this action, or its proceedings, presents "extraordinary" circumstances. Moreover, this Court is not required to consider arguments first presented on appeal to prevent a miscarriage of justice. As discussed more fully above, Mr. Serra had reasonable and meaningful notice of the issues and a meaningful amount of time in which to consult a bankruptcy attorney. Not only was he given a reasonable amount of time to do so, the

bankruptcy court went further to encourage and urge Mr. Serra to consult with counsel repeatedly at a status conference hearing. Mr. Serra failed to do so. In addition, Mr. Serra's unexplained failure to oppose the Trustee's summary judgment motion, or to file a motion free from defects in accordance with Federal Rules of Civil Procedure–a set of rules with which Mr. Serra undoubtedly is familiar–has created the procedural posture of this action. While there are consequences to these actions or inactions, there is no manifest injustice to avoid.

This Court will consider purely legal issues presented, in accordance with the second exception. This Court rejects all arguments raised by Mr. Serra to the extent that those arguments either depend on the record below or attempt to raise questions of fact that are unsupported by any evidence developed in the record. Unsupported factual arguments that attempt to raise speculations are inappropriate for the additional reason that they do not comport with the well-settled standards for a Fed. R. Civ. P. 56 motion, as discussed more fully in this opinion.

### C.     Inadequate Discovery

Mr. Serra contends that the bankruptcy court erred in granting the Trustee's summary judgment motion because there was inadequate discovery and the record was not developed. Mr. Serra's argument ignores his own failure to avail himself of the Federal Rules of Civil Procedure, which set forth procedures for litigants to conduct discovery. Mr. Serra further ignores that the Federal Rules of Civil Procedure provide a specific response to a Fed. R. Civ. P. 56 motion for a litigant who asserts that inadequate discovery precludes summary judgment. Mr. Serra failed to avail himself of these procedures. There is no evidence in the record to suggest that Mr. Serra attempted to conduct discovery during the six months the case was pending. Based on these facts, Mr. Serra's appeal is denied to the extent that he argues that the bankruptcy court erred to rule on a sparse record or in the absence of discovery.

### D.     "Reasonable Value in Exchange"

The bankruptcy court found that, pursuant to 11 U.S.C. § 548(a)(1)(B), the Debtors "receive[d] less than a reasonably equivalent value" for the $30,000 paid to Mr. Serra. The Trustee asserts that the Debtors received no consideration for the payment to Mr. Serra; Mr. Serra countered that the Debtors received more-than-adequate consideration. In granting the Trustee's summary judgment motion, the

bankruptcy court found that the Debtors received less than a reasonably equivalent value for the $30,000 they paid to Mr. Serra to represent their son in the son's legal proceedings.

As to whether the Debtors "received less than reasonably equivalent value in exchange" for the transfer of the $30,000, the Trustee submitted, inter alia, a signed check from Debtors to Mr. Serra and an August 28, 2008 letter, signed by Mr. Serra, which reads:

> Re: Payment Received on behalf of Miguel Angel Garcia
>
> To whom it may concern:
>
> The undersigned represents Miguel Angel Garcia on a pending attempted murder charge in Madera County, California.
>
> Francisco Garcia, the father of Miguel Angel, paid the undersigned by check in the sum of $30,000, of which $5,000 was disbursed to investigator Sanford Glickman. The monies were received approximately May 15, 2008.

Mr. Serra admitted that the letter was authentic in response to the Trustee's Request for Admissions. This letter establishes that the transfer was in exchange for the legal representation for Debtors' son. The question presented is whether the Debtors received "reasonably equivalent value" in exchange.

The bankruptcy code does not define "reasonably equivalent value." *See, Mellon Bank, N.A. v. The Official Comm. of Unsecured Creditors of R.M.L., Inc*., 92 F.3d 139, 148 (3d Cir. 1996) ("Thus, 'Congress left to the courts the obligation of marking the scope and meaning of [reasonably equivalent value].' "). In the absence of a statutory definition, courts have divided the inquiry into two parts. First, the court must determine whether the debtor received any "value" in the transaction. Second, the court must determine whether the value received was "reasonably equivalent" to what the debtor transferred. 5-548, Collier on Bankruptcy, 548.05.

11 U.S.C. §548(d) defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."  "Transactions that satisfy, discharge or secure all or part of an otherwise legitimate obligation are for "value;" transactions that are gifts or effectively gifts, such as corporate dividends, are not." 5-548, Collier on Bankruptcy, 548.05.

The Trustee argued that the Debtors obtained no value in exchange for the $30,000 transferred to Mr. Serra to provide legal services to Debtors' son, because the payment was not made to satisfy a

debt of the debtors, nor to satisfy a legal obligation. The Trustees, and the bankruptcy court, characterized the transfer as a gift for which the son–not the Debtors–received value in exchange.

Based on this Court's de novo review, this Court finds that the Debtors received no reasonable value in exchange for the transfer of $30,000 from their checking account to Mr. Serra. "A payment made solely for the benefit of a third party, such as a payment to satisfy a third party's debt, does not furnish reasonably-equivalent value to the debtor." *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) (citing *In re Jolly's, Inc.*, 188 B.R. 832, 842 (Bankr. D. Minn. 1995)). Here, the Trustee correctly identified the Debtors' adult son, as Mr. Serra's client, to be the beneficiary of the payment for legal services on his behalf.

Moreover, Mr. Serra failed to carry his burden to establish a cognizable indirect benefit to Debtors. "In cases where the immediate benefit from a transfer is identifiable to a non-debtor third party, the burden shifts to the transferee to show that the debtor received a cognizable indirect benefit." *In re Whaley*, 229 B.R. 767 (Bk. D. Minn. 1999). "The indirect benefit must have been both tangible and of concrete economic value." *In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 419-420 (D. Minn. 1990); *In re Jolly's, Inc.*, 188 B.R. at 842. Mr. Serra provided no evidence of a tangible or economic value. Rather, Mr. Serra argued that the Debtors received indirect benefits of love of their son and heightened self-esteem. These sorts of intangible, non-economic benefits are insufficient. "The easing of personal strain that had resulted from the existence of the debt, or the more general promotion of love, affection, or other personal tie, is too intangible for reasonable equivalence." *In re Bargfrede*, 117 F.3d at 1080 (holding that debtor received no reasonable value in exchange for paying debt of debtor's wife); *see also*; *In re Whaley*, 229 B.R. 767 (holding that debtor received no reasonable value in exchange for paying debt of live-in girlfriend). "Because the Debtor was not liable on the debt, he received no direct or indirect benefit from its satisfaction." *Id*.

Mr. Serra challenge the ruling of the bankruptcy court by arguing that there may have been facts to establish that Debtors had an obligation to Mr. Serra through contract. The undisputed evidence establishes, however, that the Debtors paid Mr. Serra to represent their adult son. Mr. Serra provided no evidence to contradict the undisputed letter signed by Mr. Serra establishing this fact. Mr. Serra's attempts to cast metaphysical doubt on this fact are inappropriate and insufficient to defeat a well-

supported summary judgment motion. Accordingly, Mr. Serra's appeal is denied on this ground.

**E.    "Mere Conduit" argument**

Mr. Serra submits that the Trustee failed to establish the first element; namely, that the transfer involved property of the debtor. 11 U.S.C. §541 defines property of the debtors as:

> all legal or equitable interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is–
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liability for an allowable claim against the debtor, for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

To establish this element, the Trustee submitted a signed check from the Debtors to Mr. Serra in the amount of $30,000 from an account bearing the names of the Debtors. Based on the signed check from the Debtors, the Trustee contends that the funds were the property of the Debtors, because the monies were transferred from the account to which the debtors legally held title.

Mr. Serra contends that evidence in the record contradicts the assumption that the $30,000 was the property of the debtor. Mr. Serra points out that in the Debtors amended bankruptcy schedule, Debtors swore that "[f]riends and family entrusted Debtors with approximately $30,000 to pay criminal defendant attorney, J. Tony Serra, on son's behalf." Mr. Serra further points out that from Debtors' schedules, it is clear that they were insolvent: the Debtors were unemployed from 2006-2008, had little cash, and substantial credit card debt. Moreover, they were abandoning much of their property to their secured creditors at the time of the transfer. Mr. Serra argues that these undisputed facts sharply contradict the assumption that the $30,000 came from the Debtors' own resources or that the $30,000 was the property of the Debtors. Mr. Serra submits that these facts suggest that the Debtors were a "mere conduit" of the funds, entrusted to them by friends and family, to pay Mr. Serra on behalf of their son.

A review of the bankruptcy court proceedings reveals that the parties failed to address the issue of whether the $30,000 was the property of the Debtors. In the Trustee's summary judgment motion, the Trustee submitted the following undisputed fact: "On May 15, 2008, Debtor transferred to the Defendant $30,000 on behalf of their adult son...to represent their son on an attempted murder charge in Madera County, California." Thus, the Trustee did not submit an essential element of its claim

directly; namely, the Trustee did not submit as an undisputed fact that the $30,000 that Debtors transferred was the property of the Debtors. Similarly, the bankruptcy court did not rule specifically that the money was the property of the Debtors. Instead, the bankruptcy court adopted the undisputed fact proposed by the Trustee. While this finding of fact established that a transfer took place, the finding does not establish necessarily that the monies were the property of Debtors.

The parties present dueling arguments which raise questions of fact and require resolution of bankruptcy law. Even if the summary judgment was unopposed, it is unclear whether the Trustee established this element pursuant to summary judgment standards, and whether the bankruptcy court considered the evidence in the record. Because this issue appears to have been unresolved in the proceedings below, this Court remands this issue to the bankruptcy court to consider in the first instance.

### CONCLUSION AND ORDER

For the foregoing reasons, this Court:

1. DENIES Mr. Serra's appeal to the extent that he argues that this due process rights were denied;

2. DENIES Mr. Serra's appeal to the extent that he improperly raises arguments for the first time on appeal;

3. DENIES Mr. Serra's appeal to the extent that he argues that the bankruptcy court erred to rule on the Trustee's summary judgment motion on a sparse record;

3. AFFIRMS the ruling of the bankruptcy court that the Debtors' received less than reasonably equivalent value in exchange for the transfer; and

4. REMANDS this action to the bankruptcy court to consider, based on the record, whether the $30,000 was the property of the debtors.IT IS SO ORDERED.

**Dated:    September 30, 2011            /s/ Lawrence J. O'Neill**
                                    UNITED STATES DISTRICT JUDGE